(Judge Taggart of the fifth circuit, sitting in place of Judge Wildman.)

LAKE SHORE & M. S. RY. v. BOTEFUHR, ADMR.

1. EVIDENCE OF CUSTOM OF GIVING SIGNALS ADMISSIBLE.

Evidence that it was the custom of a railway conductor to give warning to the train men assisting him in the making up of a train in the yards, is admissible upon the question whether, knowing the custom, the conductor exercised ordinary care, and also upon the question of whether the deceased, being aware of the custom and of the habit of the conductor, was guilty of contributory negligence.

[For other cases in point, see 6 Cyc. Dig., "Master and Servant," §§ 689-693.—Ed.]

2. BRAKEMAN HAS RIGHT TO RELY ON SIGNALS OF CONDUCTOR.

The yard brakeman of a railroad company, in the pursuance of his duty, in making up a train in the yards of the company, it being desired to reverse the location of the cars on the track, and it being necessary in so doing to pass between the cars to couple them up, has a right to expect that the cars will not be moved without a warning to him from the conductor, where it has been the habit or custom of the conductor to keep track of the trainmen assisting him.

[For other cases in point. see 3 Cyc. Dig., "Custom & Usage," §§ 105-112.— Ed.]

3. CHARGE TO JURY AS TO WHAT CONSTITUTES A CUSTOM.

Where the court in its charge to the jury refers to a habit as a custom, evidently meaning a custom in the general acceptation of the term, and not a custom having the force of law, it devolves upon plaintiff in error before he can be heard to complain thereof to frame a charge that would correct the alleged error, as a general exception to the charge, is not sufficient for that purpose.

[For other cases in point, see 2 Cyc. Dig., "Charge to Jury," §§ 382-408; §§ 619-657.—Ed.]

4. NONPREJUDICIAL ERROR IN COURT'S CHARGE.

Where rules of a railroad company in evidence go no further than to impose upon employes such duties and obligations as are imposed by the law, and such rules of law, in so far as they bear upon the issues, are correctly set forth in the charge of the court, the failure of the court to mention such rules of the company specifically or to state that such rules also impose the duties and obligations arising under the law, is not prejudicial error.

[For other cases in point, see 2 Cyc. Dig., "Charge to Jury," §§ 702-781; 4 Cyc. Dig., "Error," §§ 1718-1766.—Ed.]

5. EVIDENCE OF DEFECTIVE CAR IS ADMISSIBLE, WHEN.

Where the only negligence charged is that of the conductor of a train in the operation whereof plaintiff intestate was injured, it may be competent to show defects in the cars of such train in explanation of the movements of the train and the conduct of the parties, though no recovery could be based upon such defects.

[For other cases in point, see 6 Cyc. Dig., "Master and Servant," §§ 675-698. —Ed.]

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

O. S. Brumback, for plaintiff in error.

Doyle & Lewis, for defendant in error.

PARKER, J.

The action in the court below was by the administrator of Elmer F. Grover against the railroad company for damages to the next of kin of Grover, resulting from his death, which it was charged in the petition was brought about through the negligence of one Ford, a conductor of the railroad company, superior in authority to the deceased, and while the deceased was in the line of his duty as an employe of the railroad company, to wit, as a yard brakeman.

The negligence alleged was in the failure of the conductor to keep himself advised of the situation of the deceased while they were both

Railway v. Botefuhr.

engaged with other train men in the making up of a train in the yards of the company near the Union passenger station in this city, and in directing a certain movement by the engineer of his locomotive whereby the cars were brought together and the deceased was killed, without waiting for a signal from the deceased, or being otherwise apprised that the deceased was in a place of safety.

The trial in the court below resulted in a verdict in favor of the plaintiff for $5,500, upon which judgment was entered. Error is prosecuted by the railroad company to this court to obtain a reversal of that judgment.

Upon the trial of the case the railroad company took exceptions upon the admission of evidence, upon the overruling by the court of a motion on its behalf to withdraw the cause from the jury and direct a verdict in its favor at the close of plaintiff's evidence; upon the overruling of a like motion when all the evidence was in; on account of alleged errors in charges given at the instance and request of the plaintiff below, and in the general charge of the court with respect to various propositions.

I cannot undertake to discuss all the questions that are presented for our consideration, but will give brief attention to those which we consider most important and material, and most worthy of attention.

I shall not go into details as to the transaction or movements which resulted in the death of Grover. I have already mentioned the capacities in which Grover and the conductor, were acting. They were engaged with the other train men in making up a passenger train; that is to say, in bringing the coaches and cars into position and connecting them together, so that they would be in proper form to make a regular trip. In doing this, the positions of the cars upon a certain track as the train was brought into the station were being reversed; the train coming in from the east and stopping at the station, and it being intended that it should go out toward the east, it became necessary to reverse the location of the cars upon the track. So the eastermost car, which was a parlor car, was taken from the train by the locomotive and pulled away from the train, and then shoved in upon another track, and the next car, which was a passenger day coach, was likewise disconnected from the train, pulled away from it, and pushed in on the track with the parlor car, so that it stood eastward of the parlor car; then the smoking car was likewise changed, and then the baggage car was likewise changed. So it will be observed the order of the position of the cars was merely reversed.

In the course of these operations it became necessary for the de-

ceased and for Ford, the conductor, to pass from one track to the other, Ford, as conductor, directing the operations. It seems that when the cars were all in proper position it then became desirable to shove them together and couple them up. They were provided with so-called automatic couplers, but that as the train was being made up upon a track which had considerable curve the couplers would not operate automatically without some adjustment or manipulation by the train men to put them into position so they would couple together.

When it seemed to the conductor desirable to couple up the cars, he discovered that the last car brought in, to wit, the baggage car, was not likely to couple onto the smoking car because of some need of adjustment of the coupler; so he passed in between these cars, and he says before doing so he signaled the engineer that he was about to do so, in order that no movement might be made that would be likely to injure him; but he passed in and made the necessary adjustment and stepped out, and then signaled to the engineer to back up. This was done. He says that at that time his purpose was simply to effect a coupling up of those two cars, he supposing that by other movements that had been made in the making up of this train all the other cars had been coupled together. But in coupling up these cars the cars standing to the westward of him were moved, he thinks, not more than six inches, and he thinks that the westermost, to wit, the parlor car, could not have been standing more than six inches distant from the day car standing immediately to the east of it. Then he says that in order to determine whether all the cars were coupled together he directed the engineer to move them all forward toward the east, and upon this movement being made, it was discovered that the two rear cars were not coupled together. So he stepped back to the rear end of the train, or to the space between these two cars, to see why it was they had not coupled together —to see what the trouble was—and there they found Grover lying between the tracks, dead, with his head crushed; apparently his head had been crushed between the buffers of these two cars. The conductor says that until then he was not aware that Grover was in that position. He did not see him go there. He was unaware that it was necessary for anybody to go to that position to attend to any duty, to look after the coupling up of the cars or to do anything else. He had not seen Grover from the time before this when they had hauled the last car from the other track, to wit, the baggage car, and he says that he supposed that Grover had gone about some other business or duty in the yard, and was no longer assisting in the making up of this train; and it appears that Grover had various duties to perform in the yard, sometimes one thing

Railway v. Botefuhr.

and sometimes another, so that he was likely to be called upon to do a variety of work in the yard.

It is contended on behalf of plaintiff in error that if Grover did go in between the cars for the purpose of assisting about their coupling up, he was negligent in that he did not give warning to the conductor or to the engineer that he was about to go into that perilous position.

On behalf of the defendant in error, it is contended that the deceased was not necessarily negligent even if he went into this place without giving any warning, because it was customary in doing the work there to take that position between the cars and adjust the couplers, and it was customary for the conductor to keep track of the train men assisting him, and the conductor had every reason to anticipate, Grover not being within view, that he was about the performance of such duty, and that Grover, on the other hand, had every reason to believe and anticipate that the conductor would be regardful of his safety and looking out for him.

Upon this contention the plaintiff below produced witnesses, of whom counsel inquired as to the custom that had prevailed there in the yard for a period of years in the making up of trains, and especially in the making up of this train, and more especially in the manner that Grover performed his work as a brakeman while working under Ford; and various witnesses testified that the custom was as contended for by the plaintiff below; that Grover was in the habit of going between the cars and making these adjustments of the knuckles or couplers, and that Ford was not in the habit of giving any signals for the movement of the train until Grover would step out and give a signal that a movement might be made.

There was testimony, on the other hand, tending to sustain the contention of plaintiff in error that the custom was not so. Questions are made as to the admissibility of evidence of this character, and also as to its sufficiency in this case.

As to the admissibility of evidence of this character, we think there can be no question. The views of this court upon that subject have been expressed by Judge Haynes in the case of *Carl* v. *Pierce*, 10 Circ. Dec. 711 (20 R. 68) [affirmed, without report, *Hunt* v. *Pierce*, 64 Ohio St. 578], and especially page 712 (70), and by myself in the case of *Pennsylvania Co.* v. *Mahoney*, 12 Circ. Dec. 366 (22 R. 469).

It is, according to our views, admissible upon the question of whether, knowing the custom, or knowing the habit of train men there, and especially of Grover, the conductor exercised ordinary care; and also upon the question of whether the deceased, being aware of the cus-

Lucas County.

tom and of the habit of the conductor, was guilty of contributory negligence, or exercised ordinary care.

The evidence in the case, we should say, is hardly sufficient to establish a custom having the force of law, and perhaps not one having the force of an established and promulgated rule binding upon all employes of the company, at all times and places. But we think it is quite sufficient to show this habit in the performance of the work upon the part of this conductor and this train man when working together in the making up of that train, and our view of the matter upon the weight of the evidence is, that their habits as contended for by the defendant in error were fairly established. The fact that at times, in the questions and in the remarks of the court, and perhaps in the charge of the court, this habit has been designated as a custom, which might mean a custom of the general character I have alluded to, was not, in our judgment, a matter prejudicial to plaintiff in error. Perhaps it would be more correctly described as a habit of these people in the performance of their work, the habit of each being known to the other. But we hold with respect to the charge upon the subject, that if counsel for the plaintiff in error apprehended that the evidence might not be properly understood or applied by the jury—that the jury might have had in mind the subject of customs rather than the habits or usages of these parties—it devolved upon him to frame a charge embodying his views. *Columbus Ry.* v. *Ritter,* 67 Ohio St. 53 [65 N. E. Rep. 613] we hold that a general exception would not reach to the alleged error upon the part of the court in that respect.

It is contended on behalf of plaintiff in error that the trial judge erred in his charge to the jury in that he failed to charge that they were to be guided by certain rules introduced in evidence, the charge being that they were to be governed by the customs or usages or habits of the employes in the making up of this train at this station. What I have said with respect to the general exception on the other point we think is as well applicable to this; but aside from that, we have considered these rules very carefully and we have failed to discover any specific rule applicable to this situation, though many of the rules provide generally that in all operations the employes are to be heedful of their own safety and the safety of their fellow employes. In so far as the rules provide for this, they provide for no more than the law requires of the employes; or, in other words, they impose no different burdens or duties upon employes than those imposed by the law. And when the judge came to charge, as he did very fully, upon the respective duties and the relative duties of the deceased and the conductor, he, in effect, gave in charge all that was material and pertinent in these rules upon the sub-

ject, though the rules were not specifically mentioned. It would have given no additional force to the law as laid down by the judge to say that the company had adopted and promulgated certain rules in which these same duties of care were imposed upon the employes.

In the course of the trial, to explain why it became necessary for the train men to go between these cars in order to adjust these knuckles, witnesses were permitted to testify that certain parts of the apparatus were not in order so that they could be worked by standing in any other place than between the cars; they would not work automatically, and they could not be operated from the platforms. This was objected to upon the ground that the plaintiff was attempting to show defects in the couplers that had not been charged in the petition. We think that objection was not tenable. The only negligence alleged as a ground of recovery was that of the conductor. The fact that this apparatus was in the condition that witnesses testified, whether defective or not defective, was only incidental to explain the purpose and necessity of train men going between the cars and standing upon the ground while operating the same, and that necessity it was competent to show, even though incidentally it turned out that it was made necessary by defects in the car. It did not follow that recovery could be had upon the ground of such defect, because it might well be shown that the risk of those defects had been assumed, or that the deceased was negligent in so far as he undertook to operate defective machinery; and the court was careful in the charge to advise the jury that the only ground of recovery was the alleged negligence of the conductor. If the conductor was negligent as charged, of course that was a risk entirely distinct from any risk of injury from defective machinery or defective appliances which the deceased might have assumed, and was a risk which was not assumed by the deceased.

Without spending further time in the discussion of the facts, we simply state our conclusion, that the evidence justified the finding of the jury that the deceased was in the line of his duty when he was killed, and that he was not negligent, and that his death was brought about by the alleged negligence of the conductor. To discuss the evidence upon which we think the jury might well have relied, and to set forth the course of reasoning by which we reach this conclusion would require considerable time, and we think it would hardly be profitable.

We find no error in this record prejudicial to plaintiff in error, and the judgment of the court of common pleas will be affirmed.

**Haynes** and **Taggart, JJ.,** concur.